**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FREDERICK CHRISTOPHER SMITH
a/k/a CEDERICK C. LARRY,

    Petitioner,

v.                                                      CASE NO: 8:12-cv-661-T-30AEP

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondent(s).
_____/

**ORDER**

Petitioner, Frederick Christopher Smith, a/k/a Cederick C. Larry, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The Court has considered the petition, Respondents' response (Dkt. #5), and Petitioner's reply (Dkt. #8). Upon review, the Court determines that the petition must be denied because Smith's claims are procedurally barred or fail on the merits.

**BACKGROUND**

The facts contained in this background section are taken from Smith's initial brief on his direct appeal. Initial Brief (Dkt. #7, Ex. 3), pp. 1-7.

Smith was charged with three counts in relation to an armed robbery of the Envios Del Valle store on October 29, 2006. The counts were as follows: (1) robbery with a

... 

firearm, (2) aggravated assault with a firearm on Fernando Paloma Alvarado, and (3) aggravated assault with a firearm on Belinda Paloma.

Envios Del Valle is a check cashing and consumer goods retail store located in a Clearwater strip mall. The store, which caters primarily to the Mexican community, is equipped with surveillance video cameras and is open to the public from 9 a.m. to 9 p.m.

On October 29, 2006, Alex Alvarardo, Fernando Paloma-Alvardo (Alex's brother), and Belinda Paloma (Alex's cousin), were in the store near closing time when two armed black men entered the store demanding money. One of the two robbers, who was later identified by the victims as Smith, wore a white hat but had nothing covering his face.

Smith burst into the small office, grabbed Alex, and demanded money from Alex and Fernando while pointing a gun directly at Alex. He hit Alex on the head with the gun. Although Belinda attempted to hide in the bathroom, she was yanked out at gunpoint when the second robber kicked in the bathroom door.

The two robbers grabbed cash and checks from the cash register and from a cardboard box located underneath the counter. They fled with more than $60,000 in cash and checks and while speeding out of the shopping center in an SUV, one of the robbers fired a gun. Fernando chased the robbers in his own SUV. During Fernando's pursuit, the robbers fired as many as three shots from their vehicle, although none were aimed directly at Fernando.

Alex believed that he had seen one of the black men in the store once or twice before to cash a check, so he looked through the store's check cashing records to find a

photocopy of the man's identification. Alex produced Smith's drivers license and social security card for the investigating police. Alex recognized the man who robbed him as the same person pictured on the identification, Smith, principally because the store had very few black customers. Three days after the robbery, Alex and Fernando separately identified Smith's picture from a photo-pack shown to them by the police. Belinda Paloma made no pretrial identification, but both of the men and Belinda identified Smith as their assailant in court.

In addition, crime scene investigators photographed the scene and dusted for fingerprints. The investigators recovered a latent print from inside of the cardboard money box that matched Smith, but they had no way to tell when the fingerprint was left on the box.

The jury trial began on July 9, 2008. At the end of the trial the jury returned verdicts of guilty as charged on all three counts, and found that Smith possessed a firearm during the commission of the crimes. The court sentenced Smith to life imprisonment as a prison releasee reoffender on count one, and concurrent 15-year sentences as a violent career criminal on counts two and three. The court also imposed orders of costs, restitution, and attorney's fees.

Smith, represented by counsel, pursued an appeal of his convictions and sentences, raising the following issues:

**Point 1:**   The trial court erred in denying the defense motions for judgments of acquittal where the evidence failed to establish the defendant's participation in the offenses of conviction;

3

**Point 2:** The trial court committed reversible error when instructing the jury on principals;

**Point 3:** The prosecution's closing argument misled the jury into considering the uncharged perpetrator as a codefendant whose conduct was attributable to the defendant; and

**Point 4:** The trial court erred in imposing a monetary fine, restitution, and costs when sentencing the defendant as an enhanced offender.

On September 2, 2009, the appellate court filed an unwritten *per curiam* opinion affirming Smith's judgment and sentences.

On January 7, 2010, Smith filed a *pro se* motion for post conviction relief. In his motion, Smith raised the following claims:

**Ground 1:** Counsel was ineffective for failing to investigate and move to suppress the out and in court identification on the grounds that the identification was unreliable and tainted;

**Ground 2:** Counsel was ineffective for failing to request a continuance to obtain an independent fingerprint examiner;

**Ground 3:** Counsel was ineffective for perpetuating a state error by improperly bolstering the opinion of an expert;

**Ground 4:** The prosecutor committed prosecutorial misconduct by misleading the jury into believing that Smith's fingerprints matched those found from a cardboard box in the manager's office;

**Ground 5:** Counsel was ineffective for failing to investigate and call witnesses; and

**Ground 6:** The cumulative errors entitled Smith to a new trial.

The post conviction court entered an order dismissing in part, reserving ruling in part, and directing the state to respond in part to Smith's motion for post conviction relief on April 23, 2010. On May 5, 2010, Smith filed an amended motion for post conviction relief. On February 8, 2011, the post conviction court entered its final order denying Smith's motion.

Smith appealed the adverse rulings. On November 18, 2011, the appellate court filed an unwritten *per curiam* opinion affirming the lower court's denial of post conviction relief. On December 2, 2011, Smith filed a motion for rehearing, which was denied on January 11, 2012. The mandate issued on February 8, 2012.

Smith delivered the present petition to prison officials for mailing on March 28, 2012.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective as of April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

Where a state court initially considers the issues raised in the petition and enters a decision on the merits, Section 2254(d) governs the review of those claims. *Price v. Vincent*, 538 U.S. 634, 638 (2003). A federal court may grant a § 2254 petition only if (1) the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See Price v.*

*Vincent*, 538 U.S. at 638-39; *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

In *Putnam v. Head*, 268 F.3d 1223 (11th Cir. 2001), the Eleventh Circuit discussed the meaning of the "contrary to" and "unreasonable application" clauses of § 2254(d)(1):

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.

*Putnam*, 268 F.3d at 1241.

Section 2254 establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). If a federal court concludes that a state court applied federal law incorrectly, it may grant habeas relief only if that application was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Even when a state court decision is not accompanied by an explanation, the petitioner's burden "must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). Moreover, a state court's factual findings shall be presumed correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside

7

the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Counsel is not ineffective for failing to raise a nonmeritorious claim. *Diaz v. Secretary for the Dept. of Corrections*, 402 F.3d 1136 (11th Cir. 2005).

The Supreme Court recently observed that "surmounting *Strickland*'s high bar is never an easy task," and review under the AEDPA is doubly deferential. *Harrignton*, 131 S.Ct. at 787. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

## DISCUSSION

**Timeliness:**

Smith's petition is timely pursuant to the one-year limitation period of 28 U.S.C. § 2244(d)(1), as amended by AEDPA. According to AEDPA, a person in custody pursuant to the judgment of a state court has one year from the date his judgment became final to file a § 2254 federal habeas petition. However, the limitation period does not include "the time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The state appellate court affirmed Smith's convictions on September 2, 2009. He then had 90 days to seek review in the United States Supreme Court. Smith's 90 days ended on December 1, 2009.

A period of 37 days elapsed before Smith tolled the limitation period by filing his motion for post conviction relief on January 7, 2010. The motion was pending until the mandate issued in the ensuing collateral appeal on February 8, 2012.

An additional period of 40 days passed before Smith delivered this petition for writ of habeas corpus to prison officials for mailing on March 28, 2012. Because less than a year has elapsed, the instant petition is timely filed.

**Ground One:** Trial counsel rendered ineffective assistance when she failed to investigate and move to suppress the in court and out of court witness identifications of Smith on the grounds that the identification process was unreliable.

In support of ground one, Smith argues that the victims who identified him were already biased against him. Smith contends that while he was previously in the store to cash a check, Alex Alvarado made a racist comment that he intended to make a copy of Smith's driver's license and social security card in case Smith came back to rob them. According to Smith, Fernando Alvarado and Belinda Paloma overheard this statement and watched Smith intently while he was in the store. Smith claims that the witnesses did not have an independent recollection of the crime and only identified him as the robber because they had an "implanted subconscious premonition that he would come back to rob the store." Petition (Dkt. #1), p. 6.

9

Smith also argues that the photo-pack identification process was unreliable and tainted because the police used Virginio Paloma, the store owner and uncle of the victims, as an interpreter without assuring that he understood the imperative of being truthful or that the disclaimer be read correctly.

Smith's claims are his own conjecture. The performance of Smith's trial counsel was not deficient, nor did it cause Smith prejudice. Even if counsel had moved to suppress the identifications, there was not a reasonable probability that it would have been granted. Counsel is not ineffective for failing to raise a nonmeritorious claim. *Diaz v. Secretary for the Dept. of Corrections*, 402 F.3d 1136 (11th Cir. 2005). The state post conviction court found that there was "no reasonable probability the identifications would have been suppressed had counsel filed a motion on these grounds." Final Order Denying Defendant's Motion for Post Conviction Relief (Dkt. #7, Ex. 12), p. 2. Accordingly, this ground fails to meet the demanding requirements of *Strickland*.

The state court's decision to deny post conviction relief is not contrary to or an unreasonable application of clearly established federal law. Also, the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, this ground fails.

**Ground Two:** Trial counsel rendered ineffective assistance by failing to request a continuance in order to obtain an independent fingerprint examiner.

In support of ground two, Smith argues that the methods used by the State's fingerprint examiner were unreliable and contrary to standards set by the International Association of Identification Officers. Smith contends that his trial counsel should have

obtained an independent fingerprint examiner to review the State examiner's methods. Once again, Smith does not identify a standard that the State examiner failed to meet.

In denying Smith's motion, the state court determined that "this claim has no merit." Final Order (Dkt. #7, Ex. 12), p. 4. The court noted that the International Association of Identification Officers standards did not refute the expert's testimony that there is no requirement for a minimum number of matching points. The standards merely indicate that eight to twelve matching points would be sufficient to form a valid conclusion. Smith cannot show that there was any reasonable probability of a different outcome had his trial counsel obtained an independent fingerprint examiner. Therefore, Smith's claim fails to meet the prejudice prong of *Strickland*.

The state court's decision to deny post conviction relief is not contrary to or an unreasonable application of clearly established federal law. Also, the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this ground fails.

**Ground Three:** Trial counsel rendered ineffective assistance by perpetuating the State's error of improperly bolstering an expert's opinion.

In support of ground three, Smith argues "his counsel rendered ineffective assistance by following up on [an] improper question asked by [the] State as to whether the fingerprint examiner's findings were confirmed by another examiner, to which the examiner responded yes." Petition (Dkt. #1), p. 8.

Smith fails to show that his trial counsel performed deficiently or that he was prejudiced by his trial counsel's actions. In denying Smith's motion, the state court noted

11

that Smith acknowledged that he had previously been inside the store. In fact, Smith's counsel suggested it was during this prior visit to the store, and not in connection to the robbery, that Smith left his fingerprint there. As the state court noted, because the defense did not dispute that the print was Smith's, the "alleged error would be harmless at most." Final Order (Dkt. #7, Ex. 12), p. 5. Smith cannot show that there was any reasonable probability of a different outcome if his trial counsel had not asked about the confirmation of the expert's findings.

The state court's decision to deny post conviction relief is not contrary to or an unreasonable application of clearly established federal law. Also, the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this ground fails.

**Ground Four:** The prosecutor committed prosecutorial misconduct by misleading the jury to believe that Smith's fingerprints were matched to those lifted from a cardboard box located in the manager's office, or, in the alternative, the prosecutor committed a fraud upon the court.

In support of ground four, Smith argues that the prosecutor deliberately asserted in opening and closing statements that Smith's fingerprints were found on a box behind the store counter. Smith claims that the fingerprint examiner never testified that she had matched Smith's fingerprints to those lifted from a cardboard box in the manager's office but that the prosecutor's statements led the jury to believe that Smith's fingerprints were found in the manager's office.

The state post conviction court denied Smith's prosecutorial misconduct claim based on an independent and adequate rule of Florida procedure under Fla. R. Crim. P.

12

3.850. Accordingly, this claim of prosecutorial misconduct is procedurally barred. *See Spencer v. Sec'y*, 609 F.3d 1170, 1179 (11th Cir. 2010) (finding that five claims of prosecutorial misconduct were procedurally barred because the state post conviction court denied them based on an adequate and independent rule of Florida procedure under Fla. R. Crim. P. 3.850). The state post conviction court found that Smith's claim of prosecutorial misconduct was procedurally barred from consideration in a post conviction motion based on *Spencer v. State*, 842 So.2d 52 (Fla. 2003). Under Florida law, claims that could have been raised on direct appeal may not be reviewed in a rule 3.850 motion. *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990).

Smith does not overcome the procedural bar because he does not argue that there was any cause or prejudice to excuse his procedural default or that he was actually innocent. *See Spencer v. Sec'y*, 609 F.3d at 1180. Therefore, review of ground four is foreclosed by Smith's procedural default.

**<u>Ground Five:</u>**   Trial counsel rendered ineffective assistance by failing to investigate and call suggested witnesses.

In support of ground five, Smith explains that the State called a witness at trial who testified that Smith had purchased a car from him with a large amount of cash the day after the robbery. Smith contends that his trial counsel should have called two witnesses who would have testified that Smith had purchased cars from them with cash in the past.

The state post conviction court determined that Smith's counsel was not ineffective for failing to investigate and call these witnesses because Smith's prior cash

13

purchases of cars "does not negate any element of the charged offense." Final Order (Dkt. #7, Ex. 12), p. 6. In his Reply, Smith "concludes he is unable to establish that the [s]tate [c]ourt's decision as to this claim resulted in either an unreasonable or contrary application of [f]ederal [l]aw." Reply (Dkt. #8), p 16.

This Court agrees that the state court's decision to deny post conviction relief is not contrary to or an unreasonable application of clearly established federal law. Also, the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this ground fails.

**CONCLUSION**

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED.

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

                                                                                      /s/ James S. Moody, Jr.
                                                                                      JAMES S. MOODY, JR.
                                                                                      UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

F:\Docs\2012\12-cv-661 deny 2254.doc